Case of the day, Sanabria v. Brackett et al. It's number 25-1091. Throw it in the back. Mr. Jane, good morning. Good morning, Your Honors. I'm here representing Plaintiff Ricky Sanabria Jr. who is here in the courtroom with us today along with his parents. And I'd like to request three minutes for bottle reserve. Granted. Thank you. The Supreme Court keeps denying cert on this interesting issue of whether we're looking at an objective or subjective standard when it comes to different permutations of claims under the 14th Amendment for pretrial detainees. So perhaps you could shed some light on it. I'd be happy to, Your Honor. And, of course, we can't necessarily draw any substantive inferences from the Supreme Court's denials of cert. But I do think it is interesting, as Your Honor notes, that in a number of petitions, most recently often involving jail officials, urging the court to either restrict or overrule Kingsley, the Supreme Court has denied certiorari. If I could briefly start with the facts of this case and then turn to Kingsley and this court's precedent. The defendants in this case moved Mr. Sanabria back into a cell with a predator who understood that Mr. Sanabria had tried to escape his clutches. And within 24 hours, the predator announced, You're still trying to leave. We've got to do something about this, and attacked. Under both Kingsley and this court's precedent, this claim of unconstitutional punishment before trial must be evaluated under an objective should-have-known standard. Could you explain for us how Kingsley leads to a claim here of unconstitutional punishment if it wasn't the government itself inflicting the harm? Yes, Your Honor. The government here, or rather the state actors here, did cause the harm. The theory is that they caused the harm by failing to protect Mr. Sanabria from an attack by another detainee. Did they inflict the harm as directly as the harm was afflicted by government officials in Kingsley? They caused the harm, Your Honor, which I think is the key here, through their affirmative act of moving Mr. Sanabria back into a cell with a predator. Is that a similar type of causation as what occurred in Kingsley? I think so, Your Honor. I think that's why this court has recognized failure to protect claims. But Kingsley is an excessive force case. I mean, this is a failure to protect case. Kingsley is an excessive force case. I think that's what Judge Mascot is asking here. Absolutely, Your Honor. Kingsley itself, both in the terms of its broad reasoning and also despite the fact that the facts the court confronted involved an excessive force claim, it drew broadly on conditions of confinement precedence that didn't involve the direct application of force or a direct act by an individual officer, cases like Bell and Block. And it announced broad principles. It used language like Bell's focus on punishment does not mean that proof of intent or motive to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, a pretrial detainee can prevail by providing only objective evidence. I would also note here, when you strip away the unpublished cases and the Eighth Amendment cases, defendants' contention, the core of defendants' argument against applying Kingsley here, is, I think, two steps of reasoning on pages 23 to 24 of their brief, which is that, first, for something to constitute punishment under the Due Process Clause, you have to be able to draw an inference of punitive intent. And, second, that you can't draw that inference in a deliberate indifference case. And Kingsley rejects the first premise. Kingsley says you don't need that kind of inference. The defendant's state of mind is not a matter that a plaintiff is required to prove. And independently, the trio of cases this court noted on Monday reject the premise as well, because in those cases, the court recognized a 14th Amendment violation using a standard that, in some respects, it left undefined, but it was unambiguous about the fact that it was a should-have-known standard, and a should-have-known failure-to-protect standard, no less. If there's no subjective intent here, is it your position that there's 14th Amendment due process punishment any time a prison official moves a pretrial detainee into a cell or arrangement where subsequently that person is harmed? Not at all, Your Honor. And I think for a number of reasons. The circuits that have given effect to Kingsley in this context have coalesced around a reckless disregard standard. So it's not enough to just expose someone to conditions that then lead them to harm. The risk needs to be obvious. It needs to be a risk of serious harm, an obvious risk of serious harm. And there needs to be an intentional or deliberate decision to expose the plaintiff to that risk. We never read Bell to abrogate our subjective component of our deliberate indifference test. If we didn't read Bell to abrogate it, why should we read Kingsbury to abrogate it? Well, a few reasons, Your Honor. I think if we're looking at the issue broadly of claims of unconstitutional punishment before trial, as Kingsley directs, we should by drawing from different kinds of claims in this context. Kingsley rejects the reading of Bell that would require subjective intent or proof of intent to punish. So Kingsley at 398, Bell's focus on punishment does not mean that proof of intent or motive to punish is required. That's why throughout the decision, the court makes broad statements like the defendant's state of mind is not a matter that a plaintiff is required to prove. Not directly, not by inference. But on the facts of that case, the intent of the mindset would be less important because you actually have facts where the government actors are inflicting the harm. Right? I mean, they're doing the action that causes the harm. Whereas here, it's a different fact scenario. There's an intervening actor. So if we could go back to your, I mean, you listed a number of elements, reckless disregard, the risk is obvious, serious harm, and then some intentional deliberate decision to expose the individual to that harm. Could you explain to us how all of those are satisfied here? Yes, Your Honor. If I could briefly sort of address first the first part of your question about, and just note that our positions were on all fours with Kingsley. So the intentional act in that case was the application of force, and then it was an objective question with regard to the interpretation of the application of the force, whether it was excessive. Right? The difference between bringing about certain physical consequences intentionally and then an objective inquiry into how to interpret those consequences. If I can just push back on that a little bit, though. But to the extent, and we all know, right, that the 14th Amendment protections involve state action. So there's just, every time you say it, we're sort of glossing over the obvious distinction here, which is that in Kingsley, it was actually the officials who laid the hands on and did the action. And here, it was a different individual. So the question is whether, how we get the step here that the state becomes responsible as if it itself had inflicted the harm, to have punishment for a pretrial detainee. Nobody's saying that, like, the harm here is, like, appropriate. The question is simply whether it was inflicted by an actor that's covered by the 14th Amendment. And my response to that, the reason why that distinction is not material in this context, is because the deliberate indifference inquiry does focus on the state actor. So the intentional act that we're focusing on in this case is not the fact that Keon Carroll attacked Mr. Sanabria. It is the fact that the defendants moved Mr. Sanabria back into a cell that exposed him to a severe and obvious risk of substantial harm. And that's why I asked you then if that means any time someone's moved into a cell and there's a harm by a different person that's covered, and then you gave the answer to these three things. So could you walk us through how each of those elements are met here? Yes, Your Honor. So the first element the circuits have coalesced around is there needs to be an intentional decision with regard to the plaintiff's conditions. That's the intentional move back, putting Mr. Sanabria back into the cell with Keon Carroll. The second element is that those conditions must have exposed the plaintiff to a serious risk of substantial physical harm. Here that is because Carroll posed a serious threat to Mr. Sanabria, objectively both because he'd preyed on Mr. Sanabria previously and most of all because he now viewed Mr. Sanabria as a perceived snitch, had a very violent history. The third element is that the defendants— None of the testimony indicates that, and we're dealing here in your principal argument with what Brackett knew, none of the evidence indicates that Brackett knew anything about Carroll. I wouldn't go that far, Your Honor, but on the third element is the one about the defendants showing reckless disregard to the risk. In terms of that element, the circumstances of which Brackett was aware, I think most of all included this concern about perceived snitching. Brackett testified, and it's common sense, that when one detainee has a complaint about another detainee, you have to take caution to make sure that that detainee who's being complained about doesn't realize that the first detainee is going up to an officer and talking about them because that can lead to reprisal, violent reprisal. And by moving Mr. Sanabria out of the cell, and then shortly thereafter moving him back in, it should have been obvious to Brackett, and it would be obvious to any reasonable officer that that risk— That strengthens the deliberate indifference test significantly and gets it very close to negligence. No, Your Honor, I wouldn't say so, and of course this Court's precedents make clear that even an objective deliberate indifference standard requires much more than negligence. That's the trio of cases the Court cited on Monday. But in addition, just on Brackett before I move to Vaines, on Officer Brackett, there was also the fact that Mr. Sanabria had expressed fear of an attack to Officer Brackett. There was the fact that Officer Brackett— But Brackett says he just told me he was weird. That is what Brackett testified, Your Honor, and Sanabria testified to the contrary. We're in a position of instructional error, is our claim, and so it's defendant's burden to show— like the presumption this Court has said is that a new trial is warranted unless there's a high probability that the jury would have reached the same result. Did your client prevail if the subjective standard applies? Not against Brackett, Your Honor. Against Vaines, he does, because that was— the grant of summary judgment to Officer Vaines was an error under either standard. But if it's a subjective standard, then no. The claim against Brackett, the jury resolved that. Could we be thinking about the failure to protect as a conditions of confinement type claim? And if so, we already have Hubbard v. Taylor in our circuit where we've adopted an objective standard for 14th Amendment due process conditions of confinement claims. That's right, Your Honor, and I would also note the trio of failure to protect cases that this Court cited on Monday. Just taking a step back, our position is that Kingsley speaks broadly and that it doesn't make sense to atomize different kinds of 14th Amendment pretrial detention anti-punishment claims. Defendant's position, in contrast, is that we can isolate different types of claims from each other. So an excessive force claim has nothing to tell us about a failure to protect claim. But even if we take that approach, I think defendants still lose. The standard is still objective because in the specific context of failure to protect, where the standard has been in dispute, where the Court has questioned whether an objective or subjective standard should apply, we have these published cases saying that in the context of failure to protect... I see my time has expired. If I could finish the point. You're on our time. In the context of a failure to protect against a risk from the detainee himself, the standard should have known. And so it makes no sense to then say, but in the context of a due process claim for failure to protect against another detainee, the context is actual knowledge. So if you take defendants' atomized approach or if you take Kingsley at its word and take a broader approach, either way, both roads lead to an objective standard. So on the other hand, Palachowicz, Eighth Amendment. And we're not going to... We're not importing an objective standard into all Eighth Amendment claims. So are we caboting those failure to protect against harm to yourself as some sui generis type of claim? Your Honor, I think what the question is getting at, and I recognize in the Eighth Amendment context, there is some tension between, to be frank, between Palachowicz and the farmer standard. I don't think that tension is implicated here because we are under the 14th Amendment. And if Kingsley stands for anything, it is that the defendants cannot just say, we do things this way under the Eighth Amendment, so we should do the same thing under the due process clause. The question is, is there a principle distinction between failure to protect against detainee suicide versus failure to protect from attack by another detainee for purposes of due process? And we haven't heard anything. We made this argument on page 34 of our opening brief. Defendants, as far as I read their brief, didn't have a response to it because I don't think there is a principle distinction. You didn't make a very brief reference to it in your brief. We did, Your Honor, but we made the point. I know you touched the base, but you didn't say much about it, particularly I think our order on Monday perhaps heightened its importance. I take the point, Your Honor, but we did make the point, and we of course preserved the broader issue of whether an objective or subjective standard should apply here. Again, our principal contention, I agree, is that Kingsley controls and directs the outcome here. But again, it's two paths of the same result. Are you asking us to adopt an objective standard identical to what was embraced in the case of Castro from the Ninth Circuit? Yes, Your Honor. We think that standard makes sense for a number of reasons. At this point, all of the circuits that have given effect to Kingsley in this context have coalesced around that standard. The reasons why that standard makes sense are, as the Supreme Court noted as far back as Farmer, it's consistent with the phrase deliberate indifference. It's not compelled by the phrase deliberate indifference, but it's consistent with it. It is also an objective standard, so it's consistent with Kingsley and with the failure to protect from suicide cases of this court, and it requires substantially more than a negligence standard. So that is, I think, the right standard here, and it's consistent with this court's failure to protect suicide cases. So if I could just understand a little bit more of the implications of the objective standard from your perspective. Under the objective standard here, would your client prevail if the harm had happened the first time that he was in the cell before he was removed and put back in? I think it would be a much more difficult case, Your Honor. In what way? What's that? In what way? Well, because we wouldn't have this concern about perceived snitching because had he not been moved and had he and Brackett been able to, Officer Brackett, been able to have their conversation behind closed doors in a way that Carol was not aware of and had no reason to draw the obvious inference that Mr. Sanabria had complained about him, then that takes away, I think, what is the most distinguishing fact about the claim involving Brackett. So I'm trying to figure out just how there would be a workable test or standard moving forward for district courts to apply when they're assessing objectively whether there should be recovery and whether there's a due process obligation because it starts to, you see, like a little bit of the tension here is if we're talking about a constitutional standard under the 14th Amendment due process clause and then it turns on all of these facts, it starts to seem more like common law judging as opposed to actually constitutionally imbued right and protection. Well, I would respectfully disagree because juries all the time, including in constitutional claims, make objective totality of the circumstances determinations even under the subjective test. But here, I understand the objective standard to be whether there's like a right that attaches, whether there's an obligation. Because you're saying that the obligation actually doesn't even attach until there's this factual situation of the detainee being moved and then they're being snitching and then there being this assumption that this is how the other detainee perceives the situation and that somehow at that point the constitutional responsibility becomes that of the prison official. See what I'm saying? I think so, Your Honor. The relevant element here, the inquiry for the jury, is whether the substantial risk of serious physical harm was so apparent as to be obvious. That's an objective inquiry and it's the kind of objective inquiry that jurors and courts undertake day in and day out. Even under the Eighth Amendment standard, courts often describe the first element of sufficiently serious harm as an objective one. So jurors have to assess and courts have to assess. But just to really put a fine point on it though, here, because it's not actually the state official that has laid their hands on the individual, that element is being relied on to actually impose the state action on the prison official. That's really what you're saying, right? It's at that point in time, the snitching, the departing the cell, that all of a sudden something that wasn't the prison official's responsibility was not state action becomes state action. I think the same thing is true in a number of cases, including the failure to protect from suicide cases. In those cases, there is a claim. If the vulnerability was so obvious that it should have been known, there is not a claim if the vulnerability cannot meet that standard. Talk to us about that knowledge because I think what you're hearing from the bench is our concern that the standard here devolves into negligence. Kingsley seemed to suggest that that could be avoided through a certain level of intentionality in the first step when it came to excessive force. It sounds like you're saying, making the analogy to the vulnerability to suicide cases, that it's the knowledge. There's some degree of knowledge that would need to be proven to a jury to get to the step of potential liability. Am I understanding your argument correctly? What is it that would need to be known that would distinguish the standard you're asking to apply from a near negligence standard? I'm happy to answer the question, Your Honor. I'll start with the knowledge question. A court applying an objective standard needs to take into account the facts and circumstances that an officer presented. At least as a general matter, we're certainly not looking to hold Officer Brackett to knowledge of facts that he maybe wasn't aware of. Whatever Baines and Carroll, for instance, discussed during their meeting during the short period that Mr. Sanabria had been moved to safety that then caused Baines to call Brackett and say, move him back, we're not charging Brackett with knowledge of that, for example. The question is, under a subjective standard, did the defendant subjectively appreciate the risk? Under an objective standard, did the facts and circumstances before the defendant render the risk obvious? It's actually a pretty narrow distinction in practice. It matters a lot for purposes of the doctrine, matters a lot to Mr. Sanabria, but even under the subjective standard, as the court instructed the jury here, and as Farmer against Brennan directs, evidence of the obviousness of a risk is sufficient to give rise to an inference of subjective awareness of the risk. It's just that a defendant can then rebut that inference by saying, well, maybe it was obvious, maybe it wasn't, but I wasn't aware of it. So it is a pretty narrow gap. In terms of how the standard demands more than negligence... No, let's stop there. It is a pretty narrow gap. And Brackett, after his conversation with Sanabria, did make the move. But someone in the chain of command, whether they were properly in the chain of command or not, veins had some role in this process and tells Brackett he can't do that, move him back. Isn't Brackett sort of stuck here? And at best, I mean, at best to say this is deliberate indifference versus maybe negligence and not saying more to veins. I mean, have you hit that constitutional level that the 14th Amendment applies here under these facts? I certainly think we have, Your Honor, even as to Brackett. I grant that if we're picking between the two defendants, veins' conduct was more egregious. I agree. I think the summary judgment ruling was wrong and should be reversed under either standard. But as to Brackett, Brackett did testify at trial that he had the opportunity to push back and he chose not to. He actually said he was going to do something, try to do something the next day. Yes. But he hadn't come on duty yet. Well, he said he would do something the next day and then it turned out he wasn't even on duty. He knew that he wasn't going to be on duty. Yes, Your Honor. And so on those facts, we, I think, have established much more than negligence. I'll just quickly note the three distinctions doctrinally between the objective standard that the courts had adopted and negligence. One, there needs to be that intentional, deliberate decision regarding the plaintiff's condition, so inadvertence is not enough, oversight is not enough. Even if it was a refusal to act, which here we had an act, but even if it was a refusal to act, you had to have thought about it and made the decision. It can't just be that it didn't cross your mind. The second point is that the harm in question needs to be objectively more serious than negligence, substantially so. The third distinction is that the risk of that harm being realized needs to be substantially more serious to the point where the risk is obvious. In all of those ways, this requires much more than negligence, as this Court has already observed in Colburn and Wolozin and Palkovic. All we're asking the Court to do is apply a similar analogous standard here. Can I break down what you're calling obvious? Because I'm trying to understand whether what you're saying is that a plaintiff would need to prove that the defendant knew particular facts that a reasonable person or reasonable officer or guard would understand gave rise to a substantial risk of serious harm. Is that the gist of it? They have to know those facts, and the jury has to be persuaded of that level of knowledge. Yes, Your Honor. There may be edge cases. The reason I say that is because even under the Eighth Amendment standard, the court informer notes that an official could not escape liability by refusing or declining to confirm inferences of risk. So there may be edge cases, but as a general matter, I completely agree. All we're asking here is that the Court should have instructed the jury take what Brackett knew, the facts that he knew, based on those facts, based on that information, was the risk obvious to any reasonable officer? And was it a substantial, excessive risk of serious physical harm such that he should have refused to confirm? Under these facts in this case, why wasn't the heir harmless? Well, Your Honor, again, I'd note at the threshold it's their burden, but there needs to be a high probability that the verdict would have been the same. Here I would go back to, well, I guess first I would note this was the center of Brackett's defense. As we note in our briefs, opening, testimony, judgment as a matter of law motion, closing, at every stage Brackett's counsel emphasized it had to be, it's not a should-have-known standard, he had to have known of the risk and he didn't subjectively perceive it. That's what he said. The examples that we cite in our brief, I want to emphasize are illustrative, not exhaustive. The Court can look to the very end of Officer Brackett's closing, the last thing his counsel told the jury. It's not should-have-known, it has to be that he knew of it and he didn't know of it. The Court can look to the verdict form, which didn't just ask if Officer Brackett was deliberately indifferent, but if he was deliberately indifferent to a known substantial risk of harm. So I think the parties litigating positions and the fact that Brackett made this so central is plenty of evidence on its own. In terms of whether the risk was obvious, as we've discussed, I think this fact pattern about moving someone back into a cell when your own actions have alerted the person in that cell, who you know, the plaintiff fears, now that person also views that plaintiff as a snitch. They don't cite a single case with facts like that. That is egregious and that constitutes much more than negligence. And then when it comes to the claim against defendant Baines, of course, we have even more information I'd be happy to discuss in my rebuttal. But I just want to be clear. If this Court ruled against you, it would actually also be, I guess, narrow in a sense, right? Because it would essentially be, I mean, presumably, holding that the subjective, just affirming the application of the subjective standard, which essentially simply requires the extra piece that there be some evidence that the prison official actually knew or contemplated that this might happen, as opposed to the objective standard, which essentially means there doesn't have to be any evidence at all of the mental intent. You just look at the surrounding circumstances and you say, basically, the reasonable person would have known. So it's not saying this is okay. It's not saying there's no recovery. It's not saying there's no 14th Amendment protection in this context for pretrial detainees. It's simply saying that there has to be some evidence of subjective knowledge on the intent of the person being held liable. I want to take that in a few parts. I agree, Your Honor, that the distinction is narrow. I will say, even under an objective standard, you still have to show the risk was obvious. And under a subjective standard, that actually is evidence of mens rea. It's just that mens rea, subjective mens rea, is not the question under the objective standard. So it really is just this distinction in practice between is obviousness, under the objective standard, obviousness suffices. Under the subjective standard, obviousness creates an inference that can be rebutted. In practice, it is a narrow distinction, but doctrinally, it is a very important one, because as the Supreme Court noted in Kingsley, the cruel and unusual punishment clause and the due process clause vary significantly from a doctrinal perspective. The language of the two clauses differs, and the nature of the claims often differs, and most importantly, pretrial detainees, unlike convicted prisoners, cannot be punished at all. So I don't think there's any concern in terms of, you know, having a significant practical impact day to day from the court ruling either way here, but it is a significant issue doctrinally. I hate to keep opening up new questions, but I mean, do you... Happy to answer, Your Honor. I mean, I guess it's just conceptually, it just, again, still, when we're thinking about state action, it almost sounds like maybe the way to think of this is that a pretrial detainee, if the state is going to hold a pretrial detainee, to your point, who is not, we haven't decided or ruled or concluded that the person merits punishment at all, that there's some affirmative obligation that the state has to preserve safety, which is a little bit different from here, which is that the theory is, and this is, of course, the Supreme Court's theory, but that the 14th Amendment Due Process Clause actually attributes the punishing act to the official, whereas maybe instead the reality is that if the government's going to hold people that haven't been found guilty of anything, the government has to do so in a way that's, you know, safe and that that is what triggers the due process obligation. I don't know if you have thoughts on that. We view those as two sides of the same coin, Your Honor, so definitely agree. Whatever the court says about deliberate indifference in this context will be limited to this context, where, because deliberate indifference is a phrase that can have multiple meanings as the Supreme Court has recognized, it's limited to this context where the state has detained someone prior to trial and taken away their ability to defend themselves and exposed them to dangers that they might not experience outside of the jail walls. But ultimately, I think this is just another way of thinking about the state's obligation not to punish. It is punishment to expose someone to conditions of confinement that rise to the level of punishment, and the court has said in cases like Wilson against Sider that, I'm not sure I'm pronouncing that right, but that the protection a detainee or a prisoner is afforded against other people is every bit as much a part of his conditions of confinement as other conditions. So we think it's two sides of the same coin, and either way, the outcome, whether the court looks to Supreme Court precedent or its own precedent, is an objective standard. In Kingsley itself, the Supreme Court quotes Blackstone for the proposition that if a party can't find bail, he's to be committed to the county jail, but only for safe custody, not for punishment, which sounds like it's two sides of the same coin. Is that your understanding of this reference in Kingsley itself? Exactly, Your Honor, that it's only for safe custody, and exactly as you said, and as Blackstone said all those years ago, the flip side of that coin is that when someone is kept in unsafe custody, that amounts to punishment, that those two things are sort of in opposition to each other. But take us back to that language in Farmer that you mentioned a short while ago. Maybe you refer to it as edge cases, but we have that language from the court that makes it sound like without knowledge, there can't be punishment, right? Without that subjective level of knowledge, there can't be punishment. How do we understand these things together? You're talking about language in Farmer, Your Honor? So there is some language that suggests that in Farmer, but I think two responses. One is Farmer and Wilson and the other cases are best understood as focusing on cruel and unusual punishment. There's some discussion of the meaning of the word punishment, I'll grant that. These are Eighth Amendment cases, and at the outset, the court says in Farmer, the subjective state of mind requirement follows from the principle that only the unnecessary and wanton infliction of pain violates the Eighth Amendment. That wantonness principle traces back through Estelle to Gregg against Georgia, and it's very clear that what that principle does is distinguish punishment from cruel and unusual punishment. Wilson has similar language on this as well. The second point I'd make is that Kingsley does not make any sense. The only way to make sense of Kingsley is to understand that for due process purposes, punishment does not require intent because everybody agrees in Kingsley that the officer did not intend to inflict excessive force, and nonetheless, the court says the standard is solely an objective one on that point. So in Kingsley, there was no intent, there was still punishment, and the same is true here. So what seems to be dividing the circuits with the Tenth and some other circuits, at least in footnotes, going one way and all of the others, as you mentioned, going the objective route, is about whether, whether we have a claim-specific standard and whether Kingsley is confined to the excessive force context. Back to Farmer, again, how do we reconcile that the language that appears there that seems to take excessive force cases and out of the realm of deliberate indifferent cases and says that standard doesn't apply to this particular category? Are we looking at claim-specific standards within different types of claims under the due process clause? Well, I think if we are, then under the failure to protect cases this court cited on Monday, we still prevail. But it's important not just to note that Farmer distinguished between deliberate indifference and excessive force claims, but how it distinguished between them. Because Farmer specifically said excessive force claims are different because you have to be more deferential to officer defendants in that context, because excessive force claims are often in a fast-moving context. And so under the Eighth Amendment, an excessive force claim requires proof of the malicious and sadistic infliction of harm as opposed to unnecessary and wanting, which is a less demanding standard for deliberate indifference. So that logic here counsels in favor of an objective standard. It would be perverse under that logic, which the court also noted in Kingsley, noted in Hudson against McMillan, to allow plaintiffs to plead a purely objective case for excessive force, but then to flip and require proof of subjective intent only in the context of deliberate indifference. That's actually the opposite of what Farmer instructs. Because those are situations where there is time to deliberate and make a considered judgment. Exactly, Your Honor, exactly. Whereas in the excessive force context, it's often fast-moving. Officers have to respond to a disturbance on a short time frame. And so the court has instructed deference is maximal, not minimal, in that context. Okay. Okay. Thank you for your rebuttal. Thank you. Mr. Shapiro. Good morning, Your Honors. May it please the Court. My name is Aaron Shapiro. I'm here this morning on behalf of defendants Stephen Brackett and Brian Vaines. A couple points if I may start with. We should not lose focus that this is a deliberate indifference basis claim, not an excessive force claim. We shouldn't lose focus that the evidence in this case goes nowhere near of identifying an obvious risk. And we should also not lose sight that because the evidence in this case is so sparse that defendant Vaines knew nothing of any meaning or worth. And so for that reason, summary judgment in his favor is appropriate, but also because the evidence is so sparse that even if, after its deliberations, the court were to decide that an objective standard is appropriate, it wouldn't change the outcome in this case. And a remand's not appropriate because, in this case, instruction for a subjective standard because of the sparsity of evidence is not prejudiced. Ultimately, isn't that a credibility determination to be made by a jury? I mean, there's contradictory testimony between witnesses here about what was said, to Brackett, what was said, to Brackett and Vaines. And in the normal course, reasonableness, if it is an objective standard, is the sort of decision we'd leave to a jury. Is that right? The jury certainly did and would have to make credibility determinations. But the choices that this jury or any other jury would have to make are twofold. One, is there a showing of an obvious substantial risk? They had to make that decision in this case. If their decision below was no, then, presumptively, their deliberations went no further. But if their decision was yes, and let's go to the next step, was, in this case, Brackett deliberately indifferent, it's the same decision they would have to get to under the objective standard. But based on the evidence, their deliberations would have been either, because there are only really two factors of what was presented to a jury or would be presented to a jury. What did Sanabria believe? And what did he say to Brackett? Because there's no other evidence that anybody else witnessed anything, and there's no evidence that he spoke to anybody else about his fears or concerns. So this always comes down to Sanabria and Brackett. And so in that circumstance, if, in this case below, the jury believed that there was an obvious risk, but Brackett didn't know, then, obviously, the decision is in his favor. Under an objective standard, if he becomes should have known, there still is no way further to go because there's no way that Brackett would have known or could have known or any other officer because all these fears and concerns were in Sanabria's mind. I'm not sure I follow. I mean, the whole concept of an objective standard where you're looking at what's obvious as setting up a sort of presumption, but it's subject to rebuttal, is that a reasonable jury could take the facts as alleged by Sanabria, could credit them as to what was actually said, could conclude that any reasonable officer, knowing those facts, would understand that there was a substantial risk of serious harm, but they were instructed that if they then believed Brackett's testimony, that he didn't appreciate that risk, even if any reasonable officer would have appreciated that risk. They believed that he personally, individually did not. They were instructed under those circumstances under a subjective standard to find no liability, right? Isn't that the distinction between objective and subjective standards here? I think there's a subtle but important difference. The instruction of the jury wasn't about did Brackett appreciate some quality or some nature of the risk. It's did Brackett know anything? And under that structure, would any other reasonably placed officer have known anything about it? Not anything about it. That's where I think you're sweeping far too broadly because this is a very fine distinction that's being made, but it's an important principled one as to the difference between an objective and subjective standard. Knowledge of facts that would lead a reasonable officer to know that there was actually a substantial risk of serious harm is different than the subjective knowledge and making the determination that this particular officer, regardless of what any reasonable officer would understand from those facts, this officer knew those facts, yet subjectively didn't know that they gave rise to a substantial risk of serious harm. Agreed that it could be a fine distinction, but in this case, if the jury could have or did conclude that there was sufficient evidence of an obvious risk that would reach the threshold, then presumably they would have issued a verdict for Sanabria because those facts, that information, would then presumably have been given directly to Brackett. And so he would have known and therefore also should have known. I'm just not following. That's the difference between the objective and subjective standards. The jury could conclude with an objective standard that Brackett had knowledge of the facts, but didn't know, didn't appreciate the actual risk that they gave rise to because they credited his testimony saying that he didn't.  The subjective standard takes it over that line. Isn't that the difference between the two? So I understand the tension. And yes, if we were looking at the definition of the standard writ large, if you will, is there a demonstration of substantial risk? And if we're looking at the objective standard, it's either new or should have known of that risk. I'm perhaps going a little bit more deeply into the actual case and the facts of this case by saying he either didn't know, which is what the jury would have concluded, but if you look at it from an objective standard, then nobody else could have known and there's no way that the jury would have concluded that he could have or should have known because the only conversations, the only connection, the only exchange of information happened between Sanabria and Brackett. So there wasn't anything external to their conversations or interactions from which Brackett could glean or understand if there was this status of an obvious risk. So that's why I'm driving down a little bit more deeply than perhaps you'd like to be, but that's why I'm coming up with the answer. Are you driving far enough to say that even if there was, even if the district court should have applied the objective standard, that the error here was harmless? Yes. Simply because if the objective standard is followed, there still is no set of circumstances in this specific case from which a jury would find in favor of Sanabria. To put it differently, on these facts, it's your position that no, accepting the facts as attested to by Sanabria, that no reasonable jury could conclude that a reasonable officer would know there was a substantial risk of serious harm. Yes. I understand that that's a very pointed position, and we understand that. But that is why we believe that remand would not be appropriate or necessary if the court were to decide that in these types of claims, a failure to protect claim, the objective standard is what should be applied. Because under the specific facts and circumstances of this case, there's an unreasonable, unlikely possibility of a different outcome. Let's talk about the line of cases dealing with suicide from our circuit. Since we adopted an objective standard in the suicide line of cases, why should we have a different standard in the failure to protect case? Those are certainly interesting cases, but I do think they effectively have been convened to. They what? They have been limited to, expressly limited to suicide, prevention for suicide. Honestly, did not come across those cases in our wide-ranging preparation for the briefing that was submitted. Either party didn't come across those cases. Well, they did. The other side did on page 33. They alluded to them. In looking at them more carefully, I think it's pretty clear that the court has taken exquisite pains and deliberation to define that as a very specific type of claim, unique unto itself, and to establish an evidentiary standard so high that it effectively is the equivalent of a subjective analysis. Should I just understand you just said? Okay, because I, to my colleague's point, Kingsley, when Kingsley is adopted by our sister circuits, it's in some of these deliberate indifference suicide cases. And you're telling this panel that in your preparation for today, you did not read or uncover the circuit split cases applying Kingsley? I'm not saying that. Well, those cases, at least one of them is definitely talking about deliberate indifference in the suicide standard. And I thought I heard you just say you had not read or been aware of deliberate indifference suicide cases. It just was a curious admission to me. I was only referring to the three specific cases of Colburn, Wallachian, and Polakovich. So if we've adopted an objective standard for the duty of a prison to protect an inmate against harm to himself, what is the principle basis for applying a different standard to the prison's obligation to prevent harm to the inmate from another detainee? Why would that be a different standard? I think it's based on the evidentiary burden, the standard of showing what the risk is. And in a certain set of sequences, I will have to acknowledge that there can be a very close parallel between the two standards, one developed for suicide prevention, and then more broadly what we're talking about for, let's say, general failure to protect or failure to provide medical care, for example. But in both, the idea is you have to have actual knowledge of vulnerability to the self-harm. Precisely. Right? And the objective standard that has been adopted by the majority of our sister circuits to address it requires that there be actual knowledge of the vulnerability to this other type of harm. So what's the principle difference between the detainee on detainee harm versus detainee on self-harm? And that's why I acknowledge that when you view it that way, that the standards become very, very close. Under the current iteration of a subjective standard, obviously based in deliberate indifference jurisprudence, there is an element that if the risk is so obvious, knowledge can be inferred. And that is our read of the suicide cases, that essentially the risk is so obvious that you're simply making a conclusion about knowledge. And at that point, the deliberate indifference determination essentially becomes closer to, not identical to, but closer to what is going on with excessive force cases, where there's already a decision made to apply force, and so at that point you're only looking at the degree of the force applied, and that's an objective analysis. So with the suicide prevention, there is such a deliberate focus on the quality and nature of information necessary to specifically preserve a reckless indifference or deliberate indifference standard as opposed to negligence, that it literally should ab initio answer the question of whether the risk is obvious. But isn't that exactly what Mr. Jane just argued is embedded in the objective standard? What is discussed in Kingsley and what we, in the conditions of confinement cases, you know, in our own case law have discussed as what's required in terms of the actual knowledge of the facts of that type of vulnerability, even outside of suicide. The standard of factual proof, the obviousness standard, would be the same. Where we end up having a very meaningful distinction and a difference is with the appreciation of what that information might be, but more particularly access to. There's an assumption that if a risk is so obvious it should be known, and that is I think consistent throughout both types of subjective or objective analyses. So cannot dispute or disagree with the factual predicate of what an obvious risk would need to be shown. But the difference I still think comes down to that there is an appreciation in the suicide prevention cases that the information is so robust, the evidence is so replete, and of course the risk to the individual offender is so pronounced that there is apparently a decision that you've got to take an additional step there. Why not use exactly those terms to describe the objective standard for detainee on detainee violence? Because there is the intervening issue that it's some other actor, some other person. It's not simply the detainee with the suicide risk and then the officials who have responsibility for the custody and care and have a lot of direct contact. The intervening actor is people. Isn't it easier for a correctional facility to know the likelihood of other inmates vis-a-vis fellow inmates as opposed to the likelihood of somebody within their own mind to determine the need to attempt to take their own life? That certainly depends on the specific detainee in question. The line of cases demonstrates that the outward factual evidence is so robust that you literally have to almost close your eyes to not see it. But that is not the same as claiming a threat of risk of harm from another detainee, from another inmate. That you might never know unless there is a lot of other extraneous evidence. It certainly doesn't exist here. If you look at some of the testimony here, Carol may be the perfect example. Someone who had been charged with other rapes. That Lanes and Brackett, it could be argued, should have known that about Carol. We don't think that that rises to the level of what other cases have concluded would be enough evidence of an obvious risk. For example, in Bistrian, which is the case in this circuit that really started the adoption of Brennan in a formalized way, acknowledging application of the effective standard, in that case there was so much evidence of threats made to Bistrian. So much evidence of complaints he had made to over ten different officers. None of that exists here. Most of what Sanabria is complaining about in terms of a threat of risk occurred only between him and Carol. It was never reported. And fears of anything further in his own mind that, of course, Brackett denies was ever shared. So we don't think that this case represents a good standard for what type of harm might be obvious. We don't think that exists in this case. I guess I was a little surprised with the testimony in this case, particularly by Brackett, about his lack of knowledge, total lack of knowledge about the background of people who were in detention, pretrial detainees as well as convicted inmates. Is this sui generis to the Delaware correctional system? I'm just a little bit surprised that from what I know from my history and It is, in the simplest terms. It is not a standard or practice for housing officers to have detailed information either on the detainee's charging or on sentenced inmates' crimes and sentencing other than their terms of the sentence. It is not their standard housing practice or custody and control practice to have detailed information on, let's say, every disciplinary issue that might get an inmate detainee transitioned into disciplinary housing, which is where both Sonabria and Carroll were. There is no evidence or testimony that that is somehow a failed policy or somehow an inappropriate standard. Brackett's position on this is that it's not necessary for him to do his custody and control as a housing officer. In his view, he does not want to form an opinion about the detainees he's responsible to keep under custody and control. They're all essentially the same, and unless they are specifically classified as some kind of high-level threat or risk or need to be separated or isolated, nothing more needs to be known. Maybe I wasn't clear enough in my question. Are you saying that this is Delaware policy? It may deviate from policy in other state correctional systems? I'm not aware that it deviates from policy elsewhere. You don't know that? No. Okay. I see my time is up. Can you talk to us a little bit about Vains? I'm going to call into other questions. As to Vains, the district court granted summary judgment, but even as to the testimony between what was said by Brackett and what was said by Vains, there appear to be numerous inconsistencies between what the two of them say was discussed and how many times it was discussed. And by the other officer who took Sinabria, whether Carol went to Vains' office or not, given those contradictions and the potential for a jury to conclude that it was simply not plausible, that Brackett would not have conveyed the reasons that he went and got immediately two levels of approval to move Sinabria out of the cell to Vains, why isn't there a material question for a prior fact here? The district judge, Judge Burke, took a look at the context of the evidence, the circumstances of the evidence, and the specific claims about what was said. In other words, what was supposed to be in Brackett's mind. The determination is that there is insufficient evidence. Effectively, nothing more than speculation about knowledge of harm or threat of risk from Carol other than what could have been said by Sinabria to Brackett, which is why Brackett was not dismissed on summary judgment. So what this comes down to is what did Brackett and Vains talk about? Is the only source of knowledge relevant to Sinabria's claims? And that is where, even if there are inconsistencies about how many times they spoke or in what order they spoke, there is no inconsistency, there's no conflict about them not speaking in any detail or substantive way about Sinabria's fears. None. Vains was called for deposition. He testified under a deposition. He was not told anything. He did not ask any questions. Could a reasonable jury conclude that it was not plausible that Brackett would not have conveyed what he was told by Sinabria if you credit Sinabria's version of what he communicated? It is unlikely that a jury, a rational jury, would conclude that despite Brackett's consistent denial of saying anything substantive to Vains and, of course, Vains' testimony on deposition that he was not told anything, I think it's unlikely that a jury would conclude the contrary. There's no basis for them to conclude. And all that this is asking is essentially yet another kind of speculative kind of credibility question, which is really what Sinabria is looking for. But in terms of the record and a rational jury's approach, I do not think there would be any difference. I do not think there is a dispute about a material fact that would have been appropriate to send to the jury for a decision. Is the standard for summary judgment whether it's likely that the jury would reach that conclusion or whether there's a genuine issue of material facts that a jury could decide one way or the other? The standard is, is there a genuine issue of material facts? And in this case, we think that there is no dispute that there is not one because the only two witnesses to whatever was discussed between Vains and Brackett both consistently testify they didn't discuss any detail, any substance. So I would leave your honors with the thought that this is, in fact, a deliberate indifference claim. It is not an excessive force claim. The line of jurisprudence on this is clear that deliberate indifference has a very high standard. It's a very high knowledge standard. It's been consistent since Farmer. It's been adopted by Bishre and into this circuit. And it should not be seen as conditions of confinement or just generally to be viewed as punishment. They are not. There has to be an intervening act and a decision to act and knowledge by a defendant who's being accused of constitutional rights violation. That is consistent. And unfortunately, the courts that have been looking to adopt Kingsley more broadly have lost that train. They've lost that logical and consistent train of what a deliberate indifference claim means and the standard of proof necessary to show a violation of that. Thank you. Thank you. Unless the court has questions, I'd like to spend most of my time focusing on the veins issue, but two short preliminary points on the doctrine. I did not hear from my friend for the other side any principled reason why there should be a distinction in the due process context between failure to protect from suicide and failure to protect from an attack. The only principled distinction I heard was actually from Judge Fisher, and that cuts the other way insofar. So I actually have some other factual questions, and if I may, because I think one of the things that's having an impact here is obviously the horrific nature of the facts. It's terrible, right? Someone's a pretrial detainee harmed in this way. And so it feels very much as though there should be able to be recovery against someone. And here, you know, actions not being taken against the person who inflicted the harm. But the prison, and I, prison officials, and I understood you to say before that the idea, like, whether we conceive of it as the case law seems to, which is that here the prison officials engaging in punishment by not foreseeing the problem. Or whether we see it as an affirmative duty to protect sides of the same coin. So I just wanted to ask about other situations and adequate protection and implications of that conception. So, like, another way, you know, if we've got an affirmative duty to keep people safe, pretrial detainee, you hear they're in what seems to be a safe facility. Let's say there's a fire. A fire that comes and prisoners, or pretrial detainees are harmed by the fire. Is there liability here for the prison officials for not guarding against the fire and preventing it? Standing here, I don't know what the standard would be. I could imagine a situation where the risk was so objectively obvious that there would be liability. But I could also imagine a situation where it was totally reasonable for the facility to act as it did. And on that note, I would emphasize the language in Kingsley, which applies equally here, which is that an objective standard incorporates a degree of deference to the legitimate needs of jail administration. And so it's not the case that we're looking at this in isolation and not recognizing that what is reasonable, what is obvious in the context of a detention facility might differ than what is reasonable or obvious in a different context. And then sanitary conditions like asbestos, rats in the facility, there could be liability there too. There's punishment because those were not adequately protected against. Yes, Your Honor, there could be a due process claim for that issue. Again, depending on how severe the harm was, how obvious it was in the facts and circumstances. And have you seen cases holding that? I don't know that I can cite one standing here, but I mean, this is a I think that's a classic kind of conditions claim that could even give rise to liability, again, depending on the severity under the Eighth Amendment. And I think here it is helpful to look to the Eighth Amendment context for one particular point, which is on this question of whether a failure to protect can rise to punishment, whether it's just a totally different thing. Farmer, at least, stands for the proposition that a failure to protect can rise to cruel and unusual punishment because that is what the Eighth Amendment prohibits. And Farmer says there is deliberate indifference liability granted under a subjective standard because it has to be cruel and unusual under the Eighth Amendment. And so I think that goes to this point that these are two sides of the same coin. But I guess that's so that but that's the distinction you're making that in the asbestos rats fire, there would have to be some subjective awareness that there might be a threat. It wouldn't just be that there's asbestos and no one knows about it. And then liability is imposed. Yes, to be precise. I think the official would have to be aware of the conditions, just reasoning by analogy. The subjective standard would apply. It wouldn't be subjective in the sense, Your Honor, that they wouldn't necessarily have to be subjectively aware of the consequences of the conditions, I think. No, I'm not. I'm reasoning sort of blind here because defendants haven't raised this argument. But at minimum, yes, they would have to know of the conditions themselves and they would have to intentionally choose not to remedy them. If I could briefly focus on the claim against Faines, I see my time has expired, but I didn't get a chance to talk about it in my opening. Thank you, Your Honor. This is a claim under either standard, objective or subjective. As Your Honor noted, the standard is whether there's no genuine issue as to any material fact drawing all justifiable inferences in our favor. Now, there's been a lot of discussion about whether Brackett would have told Baines what Mr. Sanabria told Officer Brackett. We air that out in our briefs. I and I'm happy to rest on that. But I heard my friend for the other side say there was no external evidence of that conversation. That is absolutely not true with regard to Baines in two ways. One, there was evidence in the summary judgment record that Baines had access to much more specific information about Carol's violent history than even Officer Brackett. But didn't he testify that he didn't look at it? He testified that. But there was a disputed material fact on that point, because, for instance, I think even defendants admit in their brief, there was evidence that could lead a jury to conclude, contrary to his denials, that he was aware, for instance, of Carol's repeated violent attacks on other detainees shortly before his attack on Mr. Sanabria. And that was other officers testifying that Baines reviews all disciplinaries, that he knows everything going on in the facility, and that in particular, higher ups like him would have been notified where a detainee like Carol commits to assultative attacks like that in short succession, as he did. And I think most of all, as to Baines, as I noted, he actually met with Carol during the period that Mr. Sanabria had been moved to safety. And specifically, this is based on officer's testimony, objective logbook evidence, not Mr. Sanabria's testimony. Mr. Sanabria is moved to safety by Brackett. Minutes later, Carol approaches Brackett and says, I want to meet with Officer Baines. Officer Baines says, I'm quite familiar with Carol. Send him over. They meet. Carol leaves his cell just 21 minutes after Mr. Sanabria left, returns just 10 minutes before Mr. Sanabria is forced back. And during that time, Baines calls Brackett and says, move Mr. Sanabria back. And then on top of all of that, he lies about having met with Carol in his deposition, even though there is not just Officer Brackett's testimony saying he met with Carol, but a logbook showing that a runner signed out Carol and signed him back in during that period. Just based on that, plus what we know, there's evidence that Baines would have known about Carol's history. Setting aside whatever Brackett told Baines, a jury could readily have concluded that whatever they discussed in that meeting, the fact that Baines later lied about it, the highly unusual nature of Baines's subsequent call to Brackett, which Officer Brackett and others testified was extremely rare. Officer Brackett hadn't had an order like that from Baines in years of working in the facility. A jury could surely infer that Baines was subjectively aware that Carol agitated after the move, posed a serious risk of substantial harm and recklessly disregarded that risk and granted a request from Carol to have Sanabria move back in. And so under either standard, surely the summary judgment ruling was an error. And we ask this court to reverse. Thank you. Thanks both counsel for an excellent briefing and argument today. It was an important case and we will take it under advisement.